## BINNS v. THE STATE.

CRIMINAL LAW.—*Murder.*—*State of Feeling between a Witness and Deceased.*—*Harmless Evidence.*—Upon the trial of a person charged with the murder of his wife, evidence as to the state of feeling existing between a witness on behalf of the State and the deceased, before her death, and seven years before the trial, was irrelevant, but harmless to the defendant.

SAME.—*Parol Evidence of pendency of Divorce Suit by Deceased against Accused.*—In such case, parol evidence was admissible to show that a suit for divorce and alimony had been pending, wherein the deceased was plaintiff and the accused was defendant.

SAME.—*Attorney.*—*Conversation of, with Witnesses.*—In a prosecution for murder, a subpœna for witnesses, which the accused had caused to be issued on a former trial, and testimony that an attorney for the accused had had a conference with such witnesses, but not tending to elicit the conversation, were useless to the case as evidence, but harmless to the accused.

SAME.—*Instructions.*—*Inference from Facts.*—An instruction to the jury, substantially, that, in determining what facts were proved in the cause, they should carefully consider all the evidence given before them, together with all the circumstances of the transaction in question detailed by the witnesses during the trial, and that they might find any fact to be proved, which might be rightfully and rationally inferred from the evidence given, is correct.

SAME.—*Premeditated Malice, what Necessary to Constitute.*—An instruction, that premeditated malice is where the intention to unlawfully take life is deliberately formed in the mind, and that determination meditated upon before the fatal stroke is given, but that there need be no appreciable space of time between the formation of the intention to kill and the killing, that they might be as instantaneous as successive thoughts, and that it is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, is proper.

SAME.—*One Instruction Corrected by Another.*—An instruction which is contrary to law can not be corrected by another instruction on the same subject, which is according to law, unless the former be withdrawn ; but an instruction which is merely imperfect because it does not fully state the law, yet states it correctly as far as it goes, may be completed by another instruction which supplies its defect.

SAME.—*Clerical Error in Instruction.*—Where a clerical error in an instruction is plainly shown and corrected by the context, the accused, in whose favor such error would operate, can not complain of it.

SAME.—*Harmless Refusal.*—Where an instruction given by the court covers the ground of one asked by the defendant and refused, the refusal is harmless.

SAME.—An instruction asked on behalf of the defendant, that the tracks of some person, attempted to be proved as leading to and from the window of the house where the deceased was at the time of the alleged shooting, is a , material circumstance in the case, and if, from all the evidence in the cause, the jury should have a reasonable doubt as to whether the defendant made such tracks, they should find him not guilty, does not express the law, as the defendant's guilt might have been established by other evidence.

SAME.— *Weight of Evidence.*—Where instructions asked assume, as proved, that the accused had made certain statements when arrested, and instruct the jury as to the weight to be given to certain testimony, they ought to be refused.

From the Clinton Circuit Court.

*L. McClurg* and *J. V. Kent*, for appellant.

*T. W. Woollen*, Attorney General, *W. R. Moore*, Prosecuting Attorney, *N. R. Linsday* and *J. F. Elliott*, for the State.

BIDDLE, J.—At the May term of the Howard Circuit Court, 1870, the appellant was indicted for the murder of Rachel Binns.

He was twice tried and convicted of the crime in the Howard Circuit Court; but the judgment in each case was reversed by this court, for errors occurring in the court below. *Binns* v. *The State*, 38 Ind. 277 ; *Binns* v. *The State*, 46 Ind. 311.

The venue was then changed to the Clinton Circuit Court, wherein the appellant was again tried, and again convicted, and the judgment again reversed by this court, for intervening error in the court below. *Binns* v. *The State*, 57 Ind. 46.

Subsequently, he was tried the fourth time, and the fourth time convicted, and sentenced, by the judgment of the court, to imprisonment in the state-prison during life. From this judgment he again appeals to this court.

The counsel for the appellant present fourteen questions for our consideration, which we shall examine, not in the

order they are presented, but in the order in which they arose at the trial.

1.   The State's counsel asked several questions of the witness, Page Sims, called on behalf of the State, touching the state of feeling between the witness and the deceased, before her death.   The questions were objected to by the appellant, upon the ground that they were " irrelevant, and because it is matter which only tends to anticipate what seems to be a defence."   The court overruled the objection, and the appellant excepted.

We think the objection should have been sustained.   The state of feeling between a witness and a party to the suit in which he testifies, at or about the time of the trial, may be enquired into ; but the state of feeling existing seven years before the trial, between the witness and the deceased, is clearly irrelevant.   Yet the error was harmless ; it can afford no ground for reversing the judgment.   The evidence elicited was unimportant and wholly immaterial to the case.   *Rothrock* v. *Perkinson*, 61 Ind. 39.

2.   Similar questions were asked of the witness, McFarland, which may be disposed of in the same way, as being immaterial to the case and harmless to the appellant.   The authorities are abundant, and need not be cited to show that a harmless error is not sufficient ground on which to reverse a judgment.

3.   The court allowed the witness, John Davis, on behalf of the State, to testify, over the objection of the appellant, that a certain suit for divorce and alimony had been pending, wherein the deceased was plaintiff and the appellant defendant.   This ruling is not erroneous.   The pendency of a suit, the parties to it, and its subject-matter, may be proved by parol, where the record is not the ground of the action.   In this case there was no offer to prove, and no evidence admitted tending to prove, the contents of the record, or any part of it.

4. The State was permitted, over the objection of the appellant, to introduce to the jury, as evidence, a subpœna caused to be issued by the appellant at a former trial, commanding the appearance of Sarah Vinson and Cathline Vinson, to testify on behalf of the appellant, and allowed several witnesses to give testimony tending to show that Jonathan W. Gordon, then one of the attorneys for the appellant, had a conference with these witnesses, at a place called the "Scraggy House." These rulings are complained of by the appellant, but we can not see that they are erroneous. Nothing was elicited as to the conversation of the attorney, Gordon, and the witnesses subpœnaed. Besides, we do not see how the appellant can complain of his own acts in causing a subpœna to issue, witnesses to appear in obedience thereto, and his attorney to confer with them on his own behalf. The evidence was useless to the case and harmless to the appellant.

5. The court gave to the jury, of its own motion, the following instruction :

"4. In determining what facts are proved in the cause, you should carefully consider all the evidence given before you, together with all the circumstances of the transaction in question, detailed by the witnesses during the trial. You may find any fact to be proved which may be rightfully and rationally inferred from the evidence given in the case."

This instruction is not incorrect. Inferences can not be drawn from inferences, nor will presumptions arise from presumptions; but inferences may be drawn from facts proved, and presumptions may arise from facts previously established. An illustration of this principle may be found in the case before us. The appellant was indicted for the murder of his wife, by shooting her with a pistol. Suppose a witness had testified that he saw the appellant and the deceased in close proximity; that the appellant held a pistol in his right hand ; that he drew

it upon his victim; that the witness saw him fire it off, and heard the report; that the wife immediately fell dead; that a gun-shot wound was found through her body, corresponding to the size of the bullet that would fit the pistol. Still, the fact that the bullet passed out of the pistol, through the air, into and through the body of the deceased, would be left solely to inference; for no eye saw it, and no sense took cognizance of it, yet the fact is as safely proved as the firing of the pistol, the gun-shot wound, or the death of the deceased.

The remarks of Chief Justice Abbott, in *The King* v. *Burdett*, 4 B. & Ald. 95, on p. 161, are so just and apt that we adopt them as our own:

"A presumption of any fact is, properly, an inferring of that fact from other facts that are known; it is an act of reasoning; and much of human knowledge on all subjects is derived from this source. A fact must not be inferred without premises that will warrant the inference; but if no fact could thus be ascertained, by inference in a court of law, very few offenders could be brought to punishment. In a great portion of trials, as they occur in practice, no direct proof that the party accused actually committed the crime, is or can be given; the man who is charged with theft, is rarely seen to break the house or take the goods; and, in case of murder, it rarely happens that the eye of any witness sees the fatal blow struck or the poisonous ingredients poured into the cup." See, also, Wharton Evidence, sec. 1226.

6. The court further instructed the jury as follows:

"12. Premeditated malice is where the intention to unlawfully take life is deliberately formed in the mind, and that determination meditated upon before the fatal stroke is given. There need be no appreciable space of time between the formation of the intention to kill and the killing. They may be as instantaneous as succes-

sive thoughts. It is only necessary that the act of killing be preceded, by a concurrence of will, deliberation and premeditation on the part of the slayer."

In Wharton on Homicide, sec. 180, the text is as follows :

" There is a general concurrence of authority on the general meaning of premeditation. It involves a prior intention to do the act in question. It is not necessary that this intention should have been conceived for any particular period of time. It is as much premeditation, if it be entered into the mind of the guilty agent a moment before the act, as if it entered ten years before."

The following instruction in the case of *Beauchamp* v. *The State*, 6 Blackf. 299, was held good : " To constitute malice aforethought, it was only necessary that there should be a formed design to kill, and that such design might be conceived at the moment the fatal stroke was given, as well as a long time before; that malice aforethought means the intention to kill; and that when such means are used as are likely to produce death, the legal presumption is that death was intended." *Fahnestock* v. *The State*, 23 Ind. 231 ; *Keenan* v. *The Commonwealth*, 44 Pa. State, 55 ; *McKenzie* v. *The State*, 26 Ark. 334 ; *The State* v. *Dunn*, 18 Mo. 419 ; *The State* v. *Jennings*, 18 Mo. 435.

According to these authorities the twelfth instruction is not improper.

7. The court gave the following instruction to the jury over the objections of the appellant :

" 15. If the evidence justify it, you may, upon this indictment, find the defendant guilty of murder in the first degree, or of murder in the second degree. If all the allegations of the indictment have been proved, you should

find the defendant guilty of murder in the first degree. If all the allegations of the indictment, except the allegation of premeditation, have been proved, you should find the defendant guilty of murder in the second degree."

This instruction is imperfect, in not stating that the facts alleged in the indictment should have been proved beyond a reasonable doubt; but in several other instructions given on the court's own motion, and at the request of the appellant, the court instructed the jury that every material allegation in the indictment must be proved beyond a reasonable doubt, or they should acquit the defendant. These instructions, taken together, properly express the law. In such cases we think the rule should be as follows: An instruction which is contrary to law can not be corrected by another instruction on the same subject, which is according to law, unless the former be withdrawn. If both instructions were given to the jury, it could not be known which one they would accept and follow, and, in such case, the instructions being in conflict, the administration of justice would be rendered uncertain and insecure. But an instruction, which is merely imperfect because it does not fully state the law, yet states it correctly as far as it goes, may be completed by another instruction which supplies its defect. In such case the two instructions, not being in conflict, when taken together, fully state the law, and the jury can not be misled. *Achey* v. *The State*, 64 Ind. 56.

8.   As it appears in the transcript, the court, at the request of the State, instructed the jury as follows:

"Mere words, however abusive or insulting, *can* justify the taking of human life. However great a provocation may be, if there be sufficient time after the provocation is offered for passion to subside, and for reason to interpose and assert her sway, the homicide, the other elements concurring, will be murder."

The context very plainly shows that there is a clerical omission of the word *not*, immediately after the word " can," in the first sentence of the above instruction ; yet the appellant insists upon the error. Read literally, of course it is an error, but, being an error in favor of the appellant, he can not complain of it.

9. Upon request of the appellant the court refused to instruct the jury as follows :

" 3. It is not sufficient that the circumstances proved coincide with and render probable the guilt of the defendant, but they must exclude, to a moral certainty, every other hypothesis but the single one of his guilt; or it is your duty to acquit the defendant."

Immediately before refusing the above instruction, the court had given the following :

" 2. To authorize you to find the defendant guilty, as charged in the indictment in this case, the material facts proved must be susceptible of explanation upon no reasonable hypothesis consistent with his innocence."

This instruction covers the same ground as that included in the instruction refused, and we think is the better expression of the law. There is, therefore, no error in refusing the instruction numbered 3, of which the appellant can complain.

10. The court refused the following instruction, requested by the appellant :

" 4. Although the shooting of the deceased can not be explained from the evidence, except upon the supposition of the defendant's guilt, you can not convict him for that reason."

This instruction, if indeed it expresses the law properly as it stands, a question we do not pause to decide, is fairly included in instruction numbered 2, which was given by the court upon request. It was, therefore, not error to refuse to repeat the same principle of law to the jury.

11. The court also refused to give the following instruction :

" 8. If, in making up your minds, from the evidence in this case, you have a rational doubt as to the existence of any of the material circumstances attempted to be proved by the State, that circumstance ought to be excluded by you, and have no influence upon your minds whatever in forming your opinion respecting the guilt or innocence of the defendant."

The substance of this instruction was several times given to the jury in the course of the series; it was therefore not erroneous to refuse to give it again.

12. The following instruction was also refused :

" 9. The tracks of some person, attempted to be proved as leading to and from the window of the house where the deceased, Mrs. Binns, was at the time of the alleged shooting, is a material circumstance in this case, and if, from all the evidence in the cause, you have a reasonable doubt as to whether the defendant made these tracks, you should find the defendant not guilty."

This instruction was properly refused. It does not express the law. The guilt of the defendant did not depend solely on the identification of the tracks mentioned as made by the defendant, as is implied by the instruction. His guilt might have been established by other evidence without any reference to the tracks mentioned.

13. The court refused to give to the jury instructions numbered 10 and 12, at the request of the appellant. We do not set them out, but simply state the objections to them, which appear to us to be plain. Instruction numbered 10 is erroneous, because it assumes it to be proved, that the appellant made certain statements " when arrested and subsequently." Whether such statements were made, and what they were, were questions for the jury, and not the court, to decide. The instruction numbered 12 is

erroneous, because it instructs the jury as to the weight to be given to certain testimony. This is also a question peculiarly for the jury, and must not be interfered with by the court in giving instructions.

14. The remaining question presented in the brief on behalf of the appellant (we can scarely say that it has been argued) is as to the sufficiency of the evidence to support the verdict. It is all circumstantial, and so long, tedious and minute, that it is impracticable to state it in this opinion; nor can it be condensed and do justice to its accumulated weight; but we may state that, in our opinion, upon careful reading, it fairly supports the verdict, and falls within the rule laid down by the court in its instructions, and is also supported by the following authorities : *Beaver* v. *The State,* 58 Ind. 530 ; *Shepherd* v. *The State,* 64 Ind. 43.

We can find no ground of reversal in the record.

The judgment is affirmed, at the costs of the appellant.